IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERESA BANKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CIV-04-600-M |
| | ) |
| MERCURY MERCRUISER, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This matter comes before the court upon the motion of the defendant, Mercury MerCruiser ("MerCruiser"), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The plaintiff, Teresa Banks, has responded to the motion, and the defendant has replied. After careful consideration of the parties' submissions, the record, and all relevant arguments and authorities, the Court makes its determination.

MerCruiser has asserted, and Teresa Banks has failed to produce competent evidence to controvert the following material facts:

1. Ms. Banks was hired by MerCruiser on February 12, 1981 to work as an assembler. From January 26, 1983 until October 2000, she worked in the MIE/Assembly area and reported directly to Dan Zoellner. Mr. Zoellner reported to Lynn Harrison, the Area Manager for Assembly.

2. On or about October 2, 2000, Ms. Banks was transferred to her current position of Salvage Inspector, a job for which she bid. In that position, she reported directly to Mike Maple until August of 2002, and then to Casey Martin. Larry Miller, the Area Manager for Quality, was Ms. Banks' second level supervisor.

3. In August of 1988, Ms Banks was issued a verbal warning for engaging and participating in acts of physical and verbal abuse directed at other employees. In November of 1997 she was issued a final written warning as a result of friction between herself and a co-worker. Between October 2000 and July 2002, Ms. Banks was counseled on several occasions regarding what was purported to be unprofessional conduct.

4. At all times relevant to this lawsuit, MerCruiser had in place a sexual harassment policy prohibiting sexual harassment in the workplace. The policy is posted and is contained in the employee handbook. It sets out complaint procedures directing employees to report any conduct that they believe constitutes sexual harassment to their immediate supervisor, the Human Resources Department, and to the president of MerCruiser. The policy also prohibits retaliation against employees for making complaints of sexual harassment and sets forth a complaint procedure for employees who believe they have been subjected to retaliation. Employees receive training on the policy.

5. On Valentine's Day 1999, while Ms. Banks was employed in the MIE/Assembly area, her co-worker, Addie Click, left a necklace for her as a present. She attempted to return it but he would not accept it. Around that same time he began making comments to Ms. Banks about her legs, hair, and clothing, and asked her to meet him after work. He told her weekends were too long because he could not see her and that he did not enjoy taking time off because he could not see her then. He also touched her on four separate occasions. On one occasion, he touched a barrette in her hair, on another he touched her shoulders, on another he touched her back, and on another he kissed her hand.

6. After she was transferred to the Quality area, Ms. Banks had less contact with Mr. Click. He spoke directly to her on only five occasions, and never said anything of an explicitly sexual or threatening nature. In December of 2000 he gave her a toy train which she returned with a warning that she did not want any more gifts.

7. Ms. Banks testified that at some point after her transfer to the Quality area, she began to see Mr. Click in the parking lot after her shift. He never spoke to her in the parking lot and once out of the lot they went their separate ways. Ms. Banks testified that on one occasion she noticed Mr. Click parked across the street. He began to follow her once she left the lot and she circled back to the parking lot and retreated into the building.

8. On September 4, 2001, when MerCruiser's plant was closed, Mr. Click appeared at Ms. Banks' house at 9:30 in the morning. She asked him to leave and she shut the

door. Ms. Banks called Mr. Maple's office to report the encounter which lasted only five minutes. She left a voice mail and he and Mr. Miller called later that same day to inquire into the incident. Ms. Banks said Mr. Click had not threatened her. Mr. Maples and Mr. Miller advised that there was little they could do because the incident occurred off company property during non-work hours. They suggested she seek a protective order and request her neighbors to keep an eye out for unusual activity. They also told her to contact them if she had further problems with Mr. Click and to encourage her coworkers to come forward with information regarding any inappropriate workplace conduct by Mr. Click.

9. In August of 2000, Lynn Harrison received complaints from Mr. Click's coworkers that they were tired of hearing him talk about his feelings for Ms. Banks. On August 31, 2001, as a result of these complaints, Mr. Click was given a verbal warning and was required to participate in counseling through MerCruiser's Employee Assistance Program ("EAP").

10. In March, 2001, Mr. Click's group leader, Lisa Randolph, expressed to Mr. Harrison her concern that Mr. Click was continuing to express jealous type feelings towards his coworkers. Consequently, he was issued a written warning on March 30, 2001 and was once again required to participate in the EAP counseling program. MerCruiser deemed this sufficient at the time because Mr. Click had not threatened Ms. Randolph, but had merely expressed his feelings to her, and he did not directly threaten any employee.

11. In July of 2002, Mr. Harrison received additional complaints from employees regarding Mr. Click. After investigating the complaints and interviewing several of Mr. Click's coworkers, Mr. Harrison terminated Mr. Click for disruption and performance issues and so notified him by letter dated July 18, 2002.

12. On July 24, 2002, Ms. Banks was issued a final written warning after Mr. Harrison advised her supervisor Larry Miller that she had been in the MIE area during work hours and had falsely used her supervisor's name in an effort to obtain information about Mr. Click. Ms. Banks was also required to participate in MerCruiser's EAP counseling program.

13. On September 10, 2002, Ms. Banks filed her initial EEOC charge of discrimination. MerCruiser received no notice of Ms. Banks' EEOC charge until February 25, 2003.

14. On October 9, 2003, Ms. Banks was issued a written warning as a result of a dispute she had with a fork truck driver and a complaint made by a coordinator that Ms. Banks had spoken to him in an unprofessional manner.

15. On March 4, 2004, Ms. Banks was issued a final written warning and was suspended for three days after Mr. Miller received a complaint from Mr. Harrison that she had been out of her work area and in the MIE/Assembly area after the beginning of her shift.

16. Since October 2, 2000, Ms. Banks has continuously held the position of Salvage Inspector. Her benefits have remained the same and she has received annual wage increases and bonuses.

17. Since being issued the July 2002 written warning, Ms. Banks has applied for only one position with MerCruiser. The posting for the position of Purchasing Analyst indicated that a college degree was preferred and that one to five years of supply chain experience was desired. Unlike the person hired for the job, Ms. Banks lacked those qualifications.

Ms. Banks points to evidence in the record to support the following additional material facts:

18. Ms. Banks first reported Mr. Click's behavior to her direct supervisor, Dan Zoellner, in late February or early March of 1999. She made several subsequent reports to Mr. Zoellner about Mr. Click's increasingly aggressive behavior including his unwanted touching.

19. Shortly after Mike Maples became her direct supervisor, Ms. Banks informed him that Mr. Click was sexually harassing her and slandering her around the plant. She had no specific incident of which to complain at that time because she had already complained to other management. Rather, she wanted to make Mr. Maple aware of the situation and that it was a "big deal."

20 No supervisory or management personnel ever interviewed Mr. Click or Ms. Banks as part of their investigations of Mr. Click's behavior.

Nature of the Case

Ms. Banks commenced this action on May 13, 2004, alleging MerCruiser violated Title VII by subjecting her to a sexually hostile work environment and by retaliating against her when she made complaints concerning that harassment. MerCruiser asserts that it is entitled to summary judgement in its favor on Ms. Banks' sexual harassment claim first, because she cannot establish that she was subjected to severe or pervasive discriminatory conduct, and second, because she cannot establish any basis for imposing liability on MerCruiser. The company asserts it is also entitled to summary judgment on Ms. Banks' retaliation claim because its corrective actions toward her did not amount to adverse employment actions and because she cannot establish that the corrective actions were the result of anything other than her own misconduct.

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Fed. R. Civ. P. The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2553-54 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510-11 (1986). In determining whether a genuine issue of material fact exists, the court must review the record in the light most favorable to the party opposing summary judgment. Nat'l Aviation Underwriters, Inc. v. Altus Flying Serv., Inc., 555 F.2d 778, 784 (10th Cir. 1977).

I. Hostile Work Environment Sexual Harassment

a. Severe and Pervasive

In order to survive MerCruiser's motion for summary judgment on her sexual harassment claim, Ms. Banks must show that a rational jury could find that the workplace was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment. See O'Shea v. Yellow Tech. Servs., Inc., 185 F.3d 1093, 1097 (10th Cir. 1999). Severity and pervasiveness must be judged from both the objective perspective of a reasonable person in the plaintiff's position, and the subjective perspective of the plaintiff herself. Id.; see also Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993). Whether the alleged harassment is severe or pervasive can be determined only by looking at all the circumstances, including "the frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23.

MerCruiser contends that Ms. Banks cannot meet her summary judgment burden. It suggests that because Mr. Click never "groped" Ms. Banks or made explicitly sexual or threatening comments to her, his conduct cannot be considered severe or pervasive from an objective standard. MerCruiser further contends that because Ms. Banks never sought a protective order from the courts, she "is hard-pressed to show that she was subjectively too bothered by Mr. Click's conduct. . ." Defendant's Brief at p. 14. The Court finds, however that there are facts in the record from which a rational jury could determine that Mr. Click's conduct was objectively and subjectively severe and pervasive. His inappropriate attentions to Ms. Banks continued for in excess of three years. While Mr. Click may not have explicitly threatened Ms. Banks, she testified that she did in fact feel frightened by his behavior. See Defendant's Exhibit 1, Deposition of Teresa Banks at p. 83. Furthermore, there are facts suggesting that several of the plaintiff's coworkers interpreted Mr. Click's conduct to be threatening and Mr. Click's group leader indicated to his second-level supervisor that she feared Mr. Click could erupt violently. See, Plaintiff's Exhibit 5, email from Lisa Randolph to Lynn Harrison dated 3/14/2001 ( "I am still very concerned and worried that Addie could go off the deep end without notice"). Similarly, in July of 2002, Lynn Harrison, Area Manager for Assembly noted employee Diann Simpson's complaint regarding Mr. Click's behavior toward Ms. Banks, including her assertion that "Teresa parks in special parking because of Addie [Click] stalking her."[1]  See Plaintiff's Exhibit 1, Deposition of Lynn Harrison at pp. 26-27; Defendant's Exhibit 4D.   Whether discriminatory conduct is severe and pervasive is quintessentially a question of fact and is therefore not well suited for summary judgment. O'Shea, 185 F.3d at 1098. Because a reasonable jury could conclude from the facts in the record that Mr. Click's conduct was sufficiently severe and pervasive to alter the terms of Ms. Banks' employment, summary judgment on this ground must be denied.

---

[1] Courts that have considered allegations regarding stalking type behaviors have noted that stalking tends to be a characteristic form of male aggression against women. See, e.g., Frazier v. Delco Elecs. Corp., 263 F.3d 663, 667 (7th Cir. 2001); McDonnell v. Cisneros, 84 F.3d 256, 259-60 (7th Cir. 1996).

b. Employer Liablilty

MerCruiser contends that even if the Court finds Ms. Banks can state a prima facie case of hostile work environment sexual harassment, it is nonetheless entitled to summary judgment on that claim because it cannot be held liable for the harassing behavior of her coworker Addie Click. MerCruiser admits an employer may be held liable for coworker harassment if it knew or should have known of the behavior and failed to respond in a way reasonably calculated to end the harassment. It asserts, however, that it took reasonable steps to prevent sexual harassment and that it also took swift and appropriate action against Mr. Click after each complaint brought to it by his coworkers. MerCruiser argues that the disciplinary actions it undertook with regard to Mr. Click, including his ultimate termination from employment, were reasonably calculated to correct his alleged conduct. It suggests that the effectiveness of its actions toward Mr. Click must not be gauged by whether his offensive behaviors continued or even escalated, but rather by whether the remedial actions taken at each step were reasonably calculated to end the behavior. See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 676-77 (10th Cir. 1998).

An examination of the facts disclosed by the record, however, raises serious fact questions as to whether MerCruiser's discipline of Mr. Click was reasonably calculated to end his harassment of Ms. Banks. There is evidence to suggest that Ms. Banks began complaining to her supervisors of Mr. Click's harassing behaviors by early 1999. There is no evidence showing that her complaints were ever investigated or that Mr. Click was ever admonished as a result. The facts set forth by MerCruiser establish only that it took action when it received complaints from other employees concerning Mr. Click's behavior. Ms. Banks was neither consulted about Mr. Click's behavior nor informed as to how or even whether the company intended to address the problem. In his deposition, Mr. Harrison testified that he did not believe Mr. Click's conduct rose to the level of sexual harassment and indicated that Mr. Click's "major infraction was interference with other employees and creating turmoil in the workplace." Plaintiff's Exhibit 1, Deposition of Lynn Harrison at p. 15. There are facts in the record indicating that MerCruiser never initiated action on the basis of Ms. Banks' own complaints regarding Mr. Click's conduct, and that it disciplined Mr. Click simply for the trouble he caused other employees with his persistent talk about Ms. Banks. Therefore, a rational jury could conclude that MerCruiser's disciplinary actions toward Mr. Click were aimed not at halting the harassment of Ms. Banks, but were instead aimed at subduing the

disruption to other coworkers resulting from Mr. Click's constant talk about his feelings for Ms. Banks. Summary judgment on the plaintiff's sexual harassment claim must, therefore, be denied.

## II.  Retaliation

To state a prima facie case of retaliation under Title VII, Ms. Banks must show (1) that she engaged in protected conduct; (2) that she suffered an adverse employment action; and (3) that there was a causal connection between the protected conduct and the adverse employment action. <u>Wells v. Colo. Dept. of Transp.</u>, 325 F.3d 1205, 1212 (10th Cir. 2003)  The burden shifting analysis set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) is applicable to a Title VII retaliation claim. <u>McCue v. State of Kan., Dept. of Human Resources</u>, 165 F.3d 784, 789 (10th Cir. 1999).  In the summary judgment context, a plaintiff must initially raise a genuine issue of material fact with regard to each element of her prima facie case. <u>Randle v. City of Aurora</u>, 69 F.3d 441, 451 (10th Cir. 1995).  Once the plaintiff establishes her prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action.  The plaintiff then has the burden to demonstrate that the defendant's offered reasons are merely pretextual, or unworthy of belief.  If the plaintiff proffers such evidence, the motion for summary judgment must be denied.  <u>Id</u>.

MerCruiser does not dispute that Ms. Banks' complaints of sexual harassment, including her filing of a charge of discrimination with the EEOC constitutes protected activity.  Rather, it argues it is entitled to summary judgment because the plaintiff can establish neither of the remaining elements of her prima facie case.  MerCruiser contends Ms. Banks cannot show that she suffered any adverse employment action, nor can she show that the corrective actions taken against her by the company were the result of her sexual harassment complaints.

The events proffered by Ms. Banks as incidents of adverse employment action are as follows:

1. MerCruiser allowed Mr. Click's sexually harassing behavior to continue unabated;
2. She was barred from the MIE area during work hours;
3. MerCruiser refused to disclose any information to her regarding Mr. Click;
4. She was informed by MerCruiser that Mr. Click was none of her business;
5. She was issued a final written warning and mandatory EAP counseling on July 24, 2002;
6. She received a written warning and mandatory EAP counseling on October 9, 2003;

       7.      She was given a final written warning and suspension without pay on March 4, 2004.

MerCruiser argues that none of the above-described actions constitute adverse employment actions because they did not significantly affect the plaintiff's employment status. Ms. Banks remains employed with the company. She has seen no change in her job title and has suffered no loss in benefits. Additionally, she has at all times since 1999 received an annual general wage increase and annual bonus. The Tenth Circuit Court of Appeals has made it clear that adverse employment actions are not limited to monetary losses such as loss of wages or benefits, but can encompass any significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits. Stinnett v. Safeway, Inc., 337 F.3d 1213, 1217 (10th Cir. 2003). Acts which carry "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects" can also amount to adverse employment action. Berry v. Stevinson Chevrolet, 74 F.3d 980, 986 (10th Cir. 1996). However, " a mere inconvenience or an alteration in job responsibilities" will not suffice. Sanchez v. Denver Pub. Schs., 164 F.3d 527, 532 (10th Cir. 1998).

      Bearing in mind this circuit's liberal interpretation of the phrase "adverse employment actions," the Court turns to the plaintiff's allegations. Ms. Banks argues that after she complained about Mr. Click's harassment, MerCruiser retaliated against her by permitting him to continue his harassment. In support of this position she cites Gunnell v. Utah Valley State College, 152 F.3d 1253, 1265 (10th Cir. 1998) for the proposition that an employer can be liable for the retaliatory harassment engaged in by coworkers if the employer acquiesces in the retaliatory harassment. In Gunnell, however, the court clearly contemplated an employer's retaliation liability only for harassment triggered by the plaintiff's participation in protected activity. Ms. Banks has pointed to no such retaliatory harassment in this case. She has produced no evidence to suggest that Mr. Click escalated his harassment as a result of her complaints. In fact, she devotes substantial energy to establishing that Mr. Click was never even informed of those complaints. Her argument appears to boil down to an assertion that unless an employer eradicates harassment once it is made the subject of a complaint, that employer is liable for retaliation. Ms. Banks has produced no authority to bolster her theory and the Court has found none. MerCruiser's alleged tolerance of Mr. Click's continued harassment under these circumstances does not constitute an adverse employment action and cannot serve as the basis for Ms. Banks' retaliation claim.

Similarly, MerCruiser's having barred Ms. Banks from the MIE/Assembly area, its refusal to provide her with information regarding its actions toward Mr. Click, and its informing her that Mr. Click was "none of her business" do not constitute adverse employment actions.  It is clear to the Court that even the Tenth Circuit's liberal definition of adverse employment action cannot be stretched to include restriction from an area not necessary to the performance of the plaintiff's job duties, or refusal to provide her with information relating to her harassment complaints.  Such actions did not alter her job responsibilities or any other term or condition of her employment.  See Fortner v. State of Kan., 934 F. Supp. 1252 (D. Kan. 1996), aff'd, 122 F.3d 40 (10th Cir. 1997) (ruling that an employer's actions, which included verbal reprimands and a letter warning the plaintiff that she might be held liable for damages arising from a vehicle accident did not constitute an "adverse employment action" for purposes of Title VII, absent evidence showing any of these actions affected the terms or conditions of her employment or her authority, standing, rate of pay, performance evaluations, ability to perform or chances for promotion); see also Martinez v. Henderson, 252 F. Supp. 2d 1226, 1236 (D.N.M. 2002) (ruling that exclusion from workplace on days off is not an adverse employment action).  Rather, these actions appear to be examples of the mere inconvenience and heightened workplace tension that the Tenth Circuit has held not actionable under Title VII retaliation claims.  See id.; see also Heno v. Sprint/United Mgmt. Co., 208 F.3d 847, 857 (10th Cir. 2000).

   The remaining acts of which the plaintiff complains include written warnings accompanied by counseling and a three-day suspension without pay.  Her first written warning was issued on July 24, 2002, close on the heels of MerCruiser's termination of Mr. Click.  Her second written warning occurred on October 9, 2003, more than a year after Mr. Click was terminated, more than a year after Ms. Banks filed her EEOC charge of discrimination, and over seven months after MerCruiser received notice of the EEOC charge.  While Ms. Banks was required to undergo counseling in conjunction with those warnings, she has offered no evidence that the disciplinary measures resulted in loss of benefits or a material change in her employment status.  In fact the record before the Court indicates that her employment status with MerCruiser was unaffected.  Generally, such warnings are not considered sufficient to rise to the level of adverse employment actions in this circuit unless the plaintiff can also demonstrate that the employer's action was materially adverse to the plaintiff's job status.  See Rennard v. Woodworker's Supply, Inc., 101 Fed. Appx. 296, 2004 WL 1260309

(10th Cir. 2004) (where written reprimand had no immediate or practical effect on the plaintiff's job status it did not constitute an adverse employment action despite fact that such warning was the first step in the employer's progressive discipline policy); <u>Williams v. Potter</u>, 316 F. Supp. 2d 1122 (D. Kan. 2004) (letter of reprimand was not an adverse employment action where there was no evidence that it impacted the terms and conditions of the plaintiff's employment).  Because Ms. Banks has failed to show how MerCruiser's written warnings and required counseling materially affected her status with the company, they cannot be found to constitute adverse employment actions in this case.

The sole alleged adverse employment action remaining is the final written warning issued March 4, 2004, and accompanied by a three-day suspension without pay.  Because the suspension clearly resulted in a loss of material benefits to the plaintiff, the Court finds that event was sufficiently significant to constitute an adverse employment action.  Thus, Ms. Banks has established the second element of her prima facie case as it relates to her unpaid suspension.  In order to survive summary judgment, she must also demonstrate that there was a causal connection between her suspension and an activity protected under Title VII.

Ms. Banks has failed to make clear what protected activity she believes triggered her allegedly retaliatory suspension.  The last protected complaint of discrimination reflected in the record before the Court appears to be the charge of discrimination she filed with the EEOC on September 10, 2002.  MerCruiser received notice of the charge on or about February 25, 2003, almost a year prior to her suspension.  Ms. Banks is correct that a close temporal proximity between protected activity and an adverse employment action can demonstrate causation.  See <u>O'Neal v. Ferguson Constr. Co.</u>, 237 F.3d 1248, 1253 (10th Cir. 2001).  However, she has failed to point to a sufficiently close temporal proximity in this case.  See <u>Richmond v. ONEOK, Inc.</u>, 120 F.3d 205, 209 (10th Cir. 1997) (three month period insufficient in itself to establish causation); <u>Jackson v. U.S. Postal Serv.</u>, 162 F. Supp. 2d 1246, 1260 (D. Kan 2001) (seven month period insufficient to establish causation).

In addition to temporal proximity, Ms. Banks also suggests that MerCruiser's failure to properly investigate her complaints and its alleged tendency to penalize her for her efforts to learn what action, if any, was being taken in response to those complaints demonstrates that there was a causal connection between her protected complaints and the discipline imposed against her.  While

-11-

the Court is skeptical of this argument, even assuming for the sake of argument that the plaintiff has stated a prima facie case of retaliation, it is apparent that she cannot survive the applicable burden shifting analysis. MerCruiser asserts that the plaintiff's written warning and three-day unpaid suspension were the result of her interference with production and unprofessional conduct. It has proffered evidence to show it had reason to believe that Ms. Banks had been out of her assigned work area and in the MIE/Assembly area after the beginning of her shift talking with employees and interfering with production. It has also provided evidence that the unpaid suspension was imposed because Ms. Banks had received a previous written warning for similar conduct. MerCruiser has further established that the plaintiff had been subject to disciplinary actions prior to the time of the events at issue in this lawsuit, and that at least one coworker was similarly disciplined for being found outside his assigned work area. As MerCruiser has met its burden of articulating a legitimate, non-discriminatory reason for subjecting her to an adverse employment action, it was incumbent upon the plaintiff to demonstrate that this articulated reason is unworthy of belief. Ms. Banks has simply failed to come forward with any facts which would permit a reasonable jury to find that MerCruiser's reasons were merely pretextual. While she asserts that there is "abundant evidence in the record to show the weaknesses, implausibilities, inconsistencies, incoherence and contradictions" in MerCruiser's case, she has declined to identify them. The Court must therefore conclude that MerCruiser is entitled to summary judgment on Ms. Banks' retaliation claim.

<u>Conclusion</u>

Based upon the foregoing, the Court DENIES MerCruiser's motion for summary judgment as it relates to Ms. Banks' claim for sexual harassment and GRANTS MerCruiser's motion for summary judgment as it relates to her claim for retaliation.

**IT IS SO ORDERED this 24th day of June, 2005.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE